Mr. Carpenter. May it please the Court, Kenneth Carpenter appearing on behalf of Mr. Kenneth Mason by way of his wife as the substitute appellant. This case involves an attorney fee matter. Attorney fee matters are covered under the statute at 38 U.S.C. 5904. Subsection C deals with the eligibility requirements, the basic requirements for the right to charge and receive a fee by an attorney. Subsection D deals with the contingent fee arrangement that is provided for by Congress in which if an attorney agrees to charge a fee of less than 20% on a contingent fee basis that the VA will withhold those fees from past due benefits. And that is the type of fee agreement that is involved in this case. The difficulty in this case is twofold. First, that the original statute was amended and the corresponding regulations were consequently amended and the question at the heart of this matter becomes the nature of the decision made by the board. This was an appeal by the veteran who challenged the right to charge a fee by Mr. Mason that had been awarded by the VA in the first instance. When that appeal went to the board, the board made a decision on the grounds that the fee agreement was not timely filed by Mr. Mason. When the matter was presented to the veterans court, it was briefed on that issue and the government conceded that issue, but the veterans court based its decision not on the timeliness of the filing of the fee agreement, but on the fact that the fee agreement, Mr. Mason's second fee agreement was not retained within one year of the original board decision in 1997. We believe that that is a generally violation and this board should reverse the decision below. Scott, I guess in your argument, you kind of hang your hat, so to speak, on the statement in the BVA opinion that JA 104. Correct. Under the order part of the opinion, where it says the fee agreement not having been timely filed, etc. Now, the fact is, in looking at pages 103 to 104 of the joint appendix, it does appear that the board also recognized what I'll call the representation issue, namely that representation was made more than a year, or I'm sorry, the retention issue. Mr. Mason was retained more than a year after the June 97 decision, and it says in the top of 104, in light of the foregoing, the veterans form attorney is not entitled to attorney fees based on past due benefits. So it seems, even though the order part of the decision does state not timely filed, it does seem that the board also was saying, look, he wasn't timely retained and these other requirements weren't met. Now, as a fact, as the joint appendix at page 99 and continuing to 100, there is no discussion in the bindings of fact of the fee agreement in terms of the date of retention, and the conclusion of law is framed generically that the requirements for payment of attorney fees in the amount of 20% payable to the veteran calculated in the amount of 53,472.53 have not been met. So as a consequence, it seems to me that the court was required to look at what the board ordered to determine the basis or the ground for the decision. But isn't there in the findings of fact that number one, it refers to the June 97 decision, this is at JA 99, and number two, it states the appointment of attorney form signed by the veteran date is August of 1998. Some of the factual premise for the one-year issue is there, isn't it? No, I don't think so, Your Honor. It doesn't make any reference to the date of the board's decision in 1997 in number three. It only refers to the date. I'm looking at finding one, it says in June 97 the board entered a final decision, then finding two, there is a record of an appointment of attorney form dated August 1998, and then it refers in three, as you maybe were going to point out, the written fee agreement signed August 3, 1998. I mean, isn't that the factual predicate for the question of whether the requirement of being retained within a year of the 97 decision was met? Well, Your Honor, that's not the way that the appellant read the decision. That's not the way that the government read the decision, and that's not the way that the government responded to the initial briefing in this case. This was an issue that was raised, as it were, sua sponte by the court, when in fact there was an agreement by the parties that there was error made below based upon the order that was issued in this decision, and then the question became whether or not the matter should be remanded or whether this was a straight reversal situation. So it does then naturally take us to the question then of assuming that that's correct, assuming that there was no general violation. Then the question becomes whether or not the veterans court correctly interpreted 5904C, and what the veterans court did in this case was to determine that there was no ability under the provisions of the statute for a continuing representation or for an attorney to have two separate fee agreements. What happened in this case was the first fee agreement was pro bono for representation before the court. The second fee agreement was for representation before the agency on a contingent basis. Obviously, if the case was not remanded back to the agency, then there was not a basis to return based upon that representation, other than the fact that he could have, in fact, reopened. This was a reopened claim for a psychiatric disability. So you're saying even if one assumes that there's no Chenery problem, which you would disagree with, but assuming there isn't a Chenery problem, you say you still are entitled to prevail under the statute? As a matter of law, based upon the misinterpretation of the statute that was made by the veterans court, which is a direct conflict with this court's decision in Carpenter. In Carpenter, this court said clearly that the lower court in that case had erred by construing the term case as used in 5904 to exclude... Wasn't there a different fee agreement in Carpenter? I mean, wasn't the fee agreement different in Carpenter? Well, the only difference between the fee agreements is that there was a non-withholding fee agreement as opposed to withholding fee agreement. In terms of the eligibility to charge a fee under C... The attorney in Carpenter had his fee provisions well in order. Well, I'm not sure that's entirely correct, but he made his best efforts, Your Honor. But the fact is that... No, I meant that sincerely. I mean, it was... From 59... The agreement was thought out and it covered all the bases. Right. And frankly, there's no difference in the fee agreements here under the correct interpretation of the statute. The question here is whether or not when Congress provided for representation during a proceeding before a court that you are limited to that proceeding before the court, or whether or not that triggering of the eligibility to charge a fee permits you then to continue on the case before the agency when the case is remanded. What happened here was that the attorney agreed to represent Mr. Trawick before the court on a pro bono basis in which the only fee he would receive is if he prevailed under the Equal Access to Justice Act. If he did not prevail, he would not be entitled to a fee. There would be no charge to Mr. Trawick. He entered into a separate fee agreement at the same time. So you base your argument on the statute on the same sort of same case proposition. Yes. That there was only one case here and the same case was before the court as was before the board. Let me ask you this and I apologize for jumping in on it because the time is fleeting and I don't want to take all the time if anyone else has a question. But didn't here Mr. Mason sort of provide for two separate fee arrangements? He did. Specifically one before the veterans court and then two back before the board. That's correct. Whereas in Carpenter it was incorporated into a single fee agreement under the same terms and conditions. But didn't he then say, that's correct, and didn't then Mr. Mason say, okay, if I'm back before the board, I have a separate agreement and there we're back into the provisions of the retention issue? And that's right. And the question is, was he retained under the exception under C-1, which is retained in proceedings before the court? The interpretation relied upon by the veterans court would suggest that if an attorney comes before this court representing a veteran and never represented that veteran… This court being the veterans court? No, this court. Oh, this court. This court. Never represented the veteran had a fee agreement that was entered into within the one year window, which doesn't exist anymore. But then the attorney and the veteran wish to continue representation back before the agency. Under this interpretation, that's simply not possible. The attorney would be precluded from being able to enter into a valid fee agreement. And there's simply nothing in the plain language of 5904C that contemplates such a result. This court reasoned in both Stanley and Carpenter the congressional intent to incentivize attorneys to represent veterans. And that's precisely what took place here. And the only question here is whether or not 5904 can be read narrowly to limit representation simply before a court proceeding. And that makes no sense in terms of this court's analysis under 5904 in the Carpenter decision. But the government hasn't really said that this is the only question. And it seems to me that what they did after the veteran complained that other entities represented him subsequently in the dispositive aspect, that Mr. Mason was not entitled or at least not entitled to the entire 20%. And that goes to the question of the reasonableness of the fee. And that's a very important issue in this case because no one, the VA, the board, when they had authority to raise the question, or Mr. Trawick, ever raised the question of reasonableness as contemplated both under the prior version of the statute and under the subsequent version of the statute. But separate from the question of reasonableness, since the 20% is provided by statute, perhaps it's not a debate, but more a question of the reasonableness. I know you mentioned very briefly that this isn't an issue of allocation. And one of the questions that I'll ask the government is whether if, in fact, this fee is not paid to Mr. Mason, is it being paid to the other entities that the veteran said were the critical aspects of the… Well, it's my understanding that those other entities were a service organization, so there would be no fee payable to them. But the question here is that a fee under 5904D that is 20% or less by VA regulation and now by amended statute is presumptively reasonable. So it is presumed that that fee that is called for, 20% in this case, was reasonable. And to come in after the fact and argue these questions of reasonableness, there is a specific procedure set out by both statute and regulation which was not followed or complied with by either the board, the VA, or Mr. Trawick. Well, I don't think anyone has ever argued that successful representation through this complexity after having lost the first round, the 20% is not as reasonable as one might expect. But what seems to have troubled the government was the entire allocation, apparently it troubled the veteran, for the lawyer who represented him at the inception. I think we all agree that but for that initial successful representation, the other events could not have followed. At the same time, others were involved and it occurs to me that our obligation is not only to assure that veterans are treated fairly. I look at the intervention of the Bar Association, but that we don't provide obstacles so that lawyers refrain from entering into this kind of chancy representation. It seems to me that it's more complex than even though all this is argued on statutory interpretation, which perhaps is easier to comprehend, but that there are many implications here. And I intend to ask the government the same question because we're really talking about the policy, aren't we, of this arrangement. Well, I will say to the court in candor that Congress did not do a very good job writing this statute. And these issues were simply not addressed and have now come about and unfortunately this statutory scheme has significant limitations. It simply says that you have two components, eligibility and reasonableness, and that they are on two completely different tracks. And all that was ever before the VA was the question of eligibility. He was initially found eligible, the board found him not eligible, and I believe that the Veterans Court decision was erroneously made based upon a misinterpretation of 5904C1. Let's hear from the government. We'll save you rebuttal time, Mr. Carpenter. Okay, Mr. Sweet. So no attorney's fees, that which were withheld, were not paid to the veterans organizations that continued the representation, is that right? I'm sure they could have used the money. I believe that's correct, Your Honor. No money was paid. They were service representation organizations. Isn't the VA concerned about setting up a system which is full of disincentives? Here we have extremely competent counsel who are willing to take a chance on these notoriously chancy representations before the VA for the statutory fee. And the issues turn on a highly hyper-technical attempt at statutory interpretation. I would have thought or hoped the VA would look at the aspects of the reasonableness of the representation by this lawyer as compared with the others who participated. Your Honor, if this Court disagrees with the 5904C1 claim, that's exactly what we're asking this Court to do, to give the VA a chance to look at the reasonableness of the fee that Mr. Mason charged. And we believe that the RO or the General Counsel's Office should do that in the first instance, given the fact-intensive nature of the case. It's Mr. Mason that is arguing that this Court should not allow the VA at this point to look at the reasonableness of the fee. So if you disagree with us on our primary argument regarding 5904C1, that's precisely what we're asking the Court to do. Okay. What else do you want to tell us? Well, I'd like to begin with that 5904C1 issue. And the Veterans Court did not misinterpret 5904C1 when it concluded that an attorney who is retained more than a year after the first final board decision was not entitled to charge a fee for the services he provided with respect to proceedings on remand before the Department of Veterans Affairs. The prior version of 5904C1 provided that an attorney could charge a fee only if the attorney is retained with respect to such case before the end of the one-year period beginning on, and then it references the first final board decision. In this case, Mr. Mason does not and cannot dispute that the first final board decision was on June 6, 1997, and that Mr. Mason wasn't retained until more than a year after that on August 3, 1997. Therefore, the Veterans Court properly concluded under 5904C1 that he wasn't entitled to charge a fee. In response, Mr. Mason argues that the exception to that one-year retention requirement for services provided with respect to proceedings before a court entitled Mr. Mason to charge a fee for all the services that he provided after he was retained to provide services before the Veterans Court, including services he provided on remand. However, Section 5904C1 did not support that reading. It did not allow an attorney who was retained more than a year after the first final board decision, but who had been retained to provide services before the Veterans Court, to charge a fee for all his services. It only allowed him to charge a fee for the services he provided with respect to proceedings before a court. The proceedings before the Department of Veterans Affairs were not proceedings before a court, and therefore Mr. Mason was not entitled to charge a fee for the services he provided with respect to those proceedings under the exception to the one-year retention requirement in 5904C1. But I didn't see any analysis of whether this entire $50-some-thousand were allocated to the services which were actually performed, whether that would have been reasonable. An objective standard of what lawyers charge for what in this case was a successful representation. I think, well I'm adjusting under 5904, he won't be entitled to any fee if this court disagrees with that. We can parse our way through these statutes and find a way of eliminating payment to this lawyer, and at the same time establish a precedent which I think will provide a very large disincentive to pro bono or contingency representation for veterans. I don't, I think that it wouldn't be parsing the statute, Your Honor, because it's in plain language that he wasn't retained within a year, and so he wasn't entitled to charge a fee. And that Congress was concerned with balancing not only the right to encourage paid counsel to represent a veteran during the adversarial phase before the Veterans Court, but they also wanted to preserve the non-adversarial nature of proceedings before the agency and to prevent attorneys from coming in at a late date, doing minimal work, and then charging a fee for that. So I think that the prior version of 5904 really was a balancing act. So this veteran had lost, but for Mr. Mason's entry into the situation, he wouldn't have anything? I don't know if we can say that for a fact. Well, we don't know, but we know what happened. Well, the government moved to remand. I think we can say, but for the appeal, he won't be entitled to anything, but I don't know that we can say that that was because of Mr. Mason. Let me ask you one question. You heard Mr. Carpenter say that, okay, assuming there's not a machinery issue here, he still prevails on the statutory issue because of the pro bono representation agreement in the Court of Appeals for Veterans Claims, and he cites to the Carpenter case for the, what I'll call by way of shorthand, the one case rule, meaning that since there was representation before the Veterans Court, it continued on the remand, and that's how he gets around, I think, or he would say he's entitled to get around the one-year retention requirement in 5904C. What is your response to that? There are two limitations in 5904C1. First, you couldn't retain a lawyer until you had a first final board decision in a case. That's the limitation that Carpenter addressed. It did not address the second limitation, which is what is at issue here, which says that even if you retain a lawyer after the first final board decision, you had to do so within a year of the first final board decision. So Carpenter only addressed that first issue, holding that proceedings regarding earlier benefits date were part of the same case, but it did not hold or address the second limitation. And so here, Mr. Mason was never retained within one year, even under the pro bono retention agreement. That was after one year of the first final board decision. So he was never legally or properly retained, as Mr. Mason says, under 5904C1. One other question I had. In its brief, on behalf of the intervener, Mr. Trawick, counsel argues that we don't have jurisdiction because this case represents the application of law to fact, which is outside our sort of limited jurisdiction in these cases. I saw the government did not take that position in its brief. Is it your view that, in fact, we do have jurisdiction in this case? I think this court has jurisdiction over several narrow interpretation issues that Mr. Mason raises. Namely, was there a Chenery violation? Did the court misinterpret Section 5904C1 when it held that an attorney who was retained after the one-year retention requirement but was retained in the Veterans Court could provide services on remand? And whether there's anybody capable of determining reasonableness. And so, in the government's brief, we limited ourselves to what we thought were the questions of interpretation raised by Mr. Mason. However, I think that some of the arguments regarding reasonableness of the fees could go beyond that. You're saying arguments that we can consider and arguments that we can't consider are sort of flowing in and out of the case. Right. But on a basic statutory point, you say we have jurisdiction. Correct. I think there is a kernel of – well, more than a kernel. There are interpretive issues in this case that are raised, and this court can and should address those. Okay. If this court has no further questions, then the government respectfully requests – well, I guess I can briefly address the Chenery issue. There was no Chenery violation in this case because the Veterans Court affirmed the decision of the board based on the same grounds as the board, namely that Mr. Mason wasn't retained within one year of the first final board decision. Mr. Mason complains that the board did not indicate its one-year retention requirement justification in the order section but instead discussed it in the reasons and basis section of its opinion. However, Chenery did not require that the board justify its action in any particular manner. Even if it had two exceptions to Chenery apply in this case, the board's decision provided the complete factual predicate because it found the plan in the first final board decision was on June 6, 1997, and that Mr. Mason was not retained until August 1998. And it's clear that the board would have reached the same ultimate result, given its statement that the retention didn't meet the legal requirements because it was not done within one year of the first final board decision. Thank you, Your Honor. Thank you, Mr. Sheehan. Mr. Nardotti? Good morning. May it please the Court, Michael J. Nardotti, Jr., along with Michael Shane-Golden, Elizabeth McGill representing the intervener, Mr. Trewick. Your Honor, I would like to address an issue that you raised concerning the work done in this case and what really contributed to the ultimate success. We would argue that it's important to consider in context what the circumstances that led to this case being reconsidered by the board. If you follow the sequence of events, Mr. Mason was retained in August of 1998. This court decided the Hodge v. West case in September of 1998. It was a result of that decision, which Mr. Mason had nothing to do with, that the government, the secretary, made a motion. It was an unopposed motion to remand the case back to the court. On that point, which was the critical piece to send it back to the board for reconsideration, it was really fortuitous that Mr. Mason happened to be representing him at that time. There was nothing that Mr. Mason did in the course of his representation which affected that decision. Following that, there were three sessions of the Board of Veterans' Appeals with respect to the remand. Mr. Mason was listed as the named representative, but there were no hearings in any of those cases. Mr. Mason's contribution was limited to requesting records, pointing out that some social security records might exist, and requesting an examination. That was it, and then the board decided in April of 2000 that the case would be re-examined again for the disability. Mr. Mason then was discharged by Mr. Troiwick in May of 2000. To put things in context, if you look at the work that was actually done by the DAV and the American Legion representatives, if you follow the course of events that are detailed in the board decisions, there were a series of evaluations, psychological, psychiatric evaluations, evaluations of records that occurred all after Mr. Mason's representation was concluded. Are you telling us that it would be appropriate for the VA in every contingency arrangement to review after it's all over the amount of work that was done and the results by each lawyer who may have entered into the case on a contingent basis? In a case where an attorney has been discharged, certainly that is appropriate. Not as a matter of course should they do that, but when an attorney is discharged, certainly to determine whether or not the contributions of that attorney were, in the words of Mr. Mason's agreement, the agreement that he drafted, did he substantially perform, did he substantially contribute to the result that eventually was reached? The answer to my question is yes. The VA should always intervene and look and see how much work and how successful the lawyer was. Is it a fee arrangement? If the attorney is discharged, that type of determination should be made. Any time that a veteran decides to change representation and to receive, I gather again that nothing was paid to the veterans organizations that took on the representation, that that's paid for by the taxpayer or charitable contributions or whatever, but that none of that fee was diverted to the other participants, of which there were, according to the record, at least two who did significant work. So any time that the veteran changes lawyers, the first lawyer is going to have to litigate for the agreed fee or negotiate or argue as to the contribution to the final result of what the prior lawyers until the last one did. Does the last lawyer in representation get the entire statutory amount? I realize this is the viewpoint of our Bar Association, what you're expressing, right? What you're saying, Mr. Nardani, is that whenever you have a situation where an individual is represented by an attorney, and at some point in the proceedings that attorney is substituted and someone else comes in, you're saying in that circumstance there necessarily has to be, under certain circumstances, a determination perhaps as to who did what. Correct, Your Honor, because in that instance, once the attorney is discharged, the presumption of reasonableness of the 20% contingency fee is no longer applies. There should be other considerations at that point, and if the attorney is discharged, now if he leaves for other reasons, and if there's no disagreement as to whether or not the contributions, the veteran viewed the contributions as meriting some amount of compensation, what would the attorney's discharge, and certainly in the facts of this case when you look at what happened... So why would any competent lawyer take on a veteran's case pro bono, if before it's all over, a well-advised veteran can say, all right, I discharge you, and I'm going to keep the 20% for myself, and let the DAV or let some veteran's organization finish it up. Your Honor, you're perhaps attributing a more sophisticated level of understanding of these processes to the veteran and to the attorney. We would say that the protection needs to go the other way. The attorneys know, especially attorneys who practice in this area, understand what the requirements are with respect to their contribution, and if they have made those contributions, and the situation that you point out, if an attorney comes in late in the game and takes entire credit where other credit may be due, then it is appropriate that that be examined by the board to determine whether or not those contributions were appropriate. But we think that there's a balance in there. Certainly we want to encourage attorneys to take on these matters to represent veterans. On the other hand, there's a measure of protection for veterans that needs to be carefully observed in these situations. And I think in a situation, we would submit that in a situation where an attorney has been discharged, that there are questions about, certainly there should be a question about whether the entire fee is appropriate. But you would say, addressing I think Judge Newman's understandable concern, you would say, Mr. Nardani, if you had a case where an attorney represented a veteran all through the proceedings, and then in order to, quote, get out of having to pay a contingency fee at the last minute, the veteran says, okay, I'm no longer interested in having you represent me. I'm going to one of these veterans' organizations. I think you would agree that in that case, the attorney who had done the work would be entitled to the fee. Certainly. And that would be the attorney. Who decides? Are we going to have another big deal litigation such as this that would exhaust the amount of the fee in order to confront the value of the contribution up to a certain point? I don't want to prolong the discussion, but I'd certainly like to invite our Bar Association to put its mind to an appropriate procedure that isn't going to raise these complex questions of litigation over the contingency and over the representation and to assure that we don't, in the end, this veteran may benefit by the $50,000, but that we don't end up by cutting back on the pool of attorney representation. I understand, Your Honor. We understand your concern, and certainly we share the view that this representation is important, but on the same token, it is important from our perspective to protect the interests of the veteran. Can you clarify something for me, please, Mr. McIntyre? Am I correct that the representation, rather than being based on charitable contributions, is, in fact, a benefit of membership in one of those organizations? I can't ask that directly, Your Honor. I don't know if that's strictly the requirement. I don't know that the DAD or the American Legion would necessarily turn down a veteran who is in need of help, and they could run the membership issue quite quickly in order to address that. If somebody joins, they get the representation? But I don't think it's based on charitable contributions. I don't know. My mailbox is full of solicitations from these groups. Okay. Thank you, Ms. Zinardotti. Thank you. Mr. Carson? If there are no further questions. I'd like to address first the Department of Justice's suggestion that the limitation exclusion does not apply. But if you look at the plain language of the statute, it expressly says that the limitation in the preceding section does not apply in proceedings representation before the court, before a court. That's what it says. So they can't say that the limitation doesn't apply, because the limitation expressly says the preceding limitation does not apply. That's the correct reading of this statute. Now to deal with the amicus's view. The amicus is urging this court to take a position that is contrary to the public policy determination made by Congress. Now whether that public policy determination is correct or not is not for me or this court to judge. But the public policy determination was made in 5904D that if an attorney will represent on a contingent fee basis and represent with a contingent fee of 20% or less, then that fee will be withheld from the veteran's past due benefits to pay those attorney fees. That is the public policy determination that was made by Congress. The VA interpreted that public policy determination by regulation and wrote a regulation under the prior version of the statute that said that a 20% fee was presumptively reasonable. When Congress amended 5904, they included that regulatory provision in the statute. So what we're confronted here with is the amicus and Mr. Trawick coming back with what is essentially buyer's remorse that he entered into a 20% contingent fee contract and now wants out from under it. The fact is that Congress made the public policy determination to incentivize attorneys to represent veterans on a contingent fee basis where there would be no out of pocket money or attorney fees paid by the veterans. I'm just asking what would be the situation, and this doesn't apply here, but say you have a case where an attorney is hired by a veteran, attorney A. Midway through the case, that representation ends and attorney B is hired, and both attorneys are hired on a contingency basis, and the veteran is successful in his or her claim. How does the fee range? Would each of them get half of the total 20%? Well, there has been no direct litigation on that type of contest. I believe that there was one case before the Veterans Court that somewhat dealt with that issue, but there is no current statutory or regulatory distribution plan, if you will, for those types of circumstances. And that's frankly where my remark in my opening was made to the fact that this is not a very well-written statute, and it leaves a lot of serious perils for both counsel and for the veteran. But the bottom line is that when a veteran enters into a fee agreement, that the fee agreement is a binding contract on that veteran that was contemplated by Congress. And that fee agreement, when it calls for a fee of 20% or less, which is what is called for here, is presumptively reasonable. And for Mr. Trawick to come to this court and say, well, we want you to write a rule that says that that presumption should not apply when the attorney has been discharged, is simply in direct contravention of that public policy. I urge the court to reverse the Veterans Court decision in this matter. Am I correct that your tannery argument is essentially based on the contention that the Veterans Court affirmed on the basis that Mr. Mason violated the one-year requirement, but the board decided the case based on his failure, Mr. Mason's failure to timely file that? The 30-day regulatory requirement to file the fee agreement. So the board, though, did base its decision in part on the one-year requirement. Am I not correct? They did have discussion of that, Your Honor. I'm not sure that there is the connection of that discussion of the law based on the foregoing. He didn't meet the requirements. Because if you back up in the decision, that also discusses the 30-day requirement. If they did, then Chenery's out the window. Well, I'm not exactly sure that's correct, Your Honor, because obviously Chenery is a judicially created doctrine. And what we're talking about here is a case in which an appellant briefs an issue, the government responds to that issue, concedes error, and then the court wants to go down another direction. And it just seems to me that that's where Chenery's fundamentals are at. And whether that's correct and whether maybe this should have been sent back, if that was a legitimate question, for the board to clarify its decision under the Chenery doctrine. Okay.  Any more questions? Good. Thank you, Mr. Carpenter and Mr. Sawyer. I got it. The case is taken into submission.